# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOSEPH CHARLES FREY,**
        Petitioner,

v.                                                    Case No. 08C0347

**BRADLEY HOMPE,**
        Respondent.

## DECISION AND ORDER

On April 24, 2008, Joseph Charles Frey filed this petition pursuant to 28 U.S.C. § 2254, challenging his conviction of false imprisonment and burglary in State v. Frey, Brown County, Wisconsin, Circuit Court Case No. 1991-CF-95.[1] For the reasons stated below, the petition will be denied.

## I. BACKGROUND

In 1991, a jury found petitioner guilty of false imprisonment, burglary, and first-degree sexual assault with the threat or use of a dangerous weapon. The court entered

---

[1] Petitioner is also serving a sentence based on a conviction entered in a different Wisconsin case, Winnebago County Case No. 1993-CF-127. Petitioner is not challenging his Winnebago County conviction in this action. However, petitioner contends that if his Brown County conviction is set aside in the present action, then any time served on the Brown County sentence must be credited to his Winnebago sentence. (See Pet'r's Reply to State's Answer [Docket Entry #7] at ¶¶ 03-04.)

Petitioner's Brown County sentence also includes a second-degree sexual assault charge arising out of a separate incident in Brown County. Although it is not clear, petitioner does not appear to be challenging the second-degree sexual assault conviction. I reach this conclusion because petitioner's claim is that the state was required to retry him on all the charges that he took to trial. Petitioner never went to trial on the second-degree sexual assault charge (he pleaded no contest), and so his conviction on that charge would seem to be outside the scope of his habeas petition. In any event, even if petitioner meant to assert a claim challenging his second-degree sexual assault conviction, I would deny the claim for the same reasons that I am denying his other claims.

a judgment of conviction on October 1, 1991. (Answer Ex. C.) Petitioner appealed, challenging only the first-degree sexual assault conviction. In August 1993, the state court of appeals concluded that, as a matter of law, petitioner's bare hands were not "dangerous weapons" within the meaning of the first-degree sexual assault statute. Because the court could not determine whether the jury had found that the "dangerous weapon" used by petitioner was his bare hands (rather than a pillow, which the court found would have been a dangerous weapon), the court reversed the conviction and remanded for a new trial. (Petition Ex. A.) The court of appeals did not discuss the burglary or false imprisonment convictions.

On February 24, 1995, the state elected to dismiss the first-degree sexual assault charge rather than retry petitioner. (Answer Ex. D.) At this point, the parties argued over what to do about petitioner's convictions on the burglary and false imprisonment counts. Although the court of appeals stated that it was reversing "the judgment" and remanding "the matter" for a new trial, the state argued that the court of appeals in fact reversed only the first-degree sexual assault conviction, leaving the burglary and false imprisonment convictions intact. Petitioner argued that the court of appeals reversed the entire judgment, and that therefore petitioner could not be convicted of the remaining crimes unless the state retried him. Apparently, the trial court agreed with the state and determined that petitioner's convictions on the burglary and false imprisonment charges were unaffected by the appeal. However, the trial court did not memorialize this decision in writing, and no transcript of an oral ruling is in the present record.

On May 2, 1995 (almost two years after the court of appeals reversed petitioner's conviction), petitioner's counsel filed a "petition for clarification" with the court of appeals,

in which he asked the court to clarify whether it reversed all of petitioner's convictions or just the first-degree sexual assault conviction. (Answer Ex. at App. at 101.) The state opposed the petition, arguing that there was no such thing as a "petition for clarification" permitted by Wisconsin law, and that petitioner's remedy was to take a direct appeal from the trial court's order leaving the burglary and false imprisonment charges intact. (Id. at App. 104.) On May 16, 1995, the court of appeals denied the petition for clarification without comment. (Id. at App. 107.) Petitioner's counsel took no further action on this issue, and he never filed a direct appeal of the trial court's interpretation of the court of appeals's decision.

Neither petitioner nor his counsel took any further action with respect to the Brown County convictions until September 2007. However, on June 18, 2003, the Brown County court entered an amended judgment of conviction. (Answer Ex. A.) Apparently, this was done in response to an inquiry from the prison at which petitioner was incarcerated. (Petition Ex. D.) The prison notified the court that it was aware that petitioner's original conviction had been reversed, and that it did not have an amended judgment reflecting petitioner's current status. The court then entered the amended judgment showing that in 1991 petitioner was convicted of false imprisonment, burglary, and second-degree sexual assault and sentenced to twenty-two years' imprisonment.[2]

On September 10, 2007, petitioner filed a pro se writ of habeas corpus with the Wisconsin Supreme Court. (Answer Ex. E.) Petitioner argued that because the 1993 court of appeals decision reversed his convictions on all counts, and because the state never

---

[2]As noted, the second-degree sexual assault conviction stemmed from petitioner's no contest plea arising out of a separate incident.

3

retried him, petitioner was entitled to have his sentence on the false imprisonment and burglary charges vacated. The petition also alleged that petitioner's post-conviction counsel was ineffective for not filing a direct appeal challenging the trial court's decision that left the burglary and false imprisonment charges intact. The only explanation that petitioner gave for waiting until 2007 to file a habeas petition was that he was not able to obtain "copies of his transcripts" until October 16, 2007. (Answer Ex. E at p. 5 of Petition.) The Wisconsin Supreme Court denied the habeas petition without comment on November 5, 2007.

Petitioner filed the present action on April 24, 2008, arguing that the trial court's refusal to recognize that all three of his convictions had been reversed was a denial of due process. Respondent argues that the petition must be denied because it is barred by the statute of limitations and because petitioner has procedurally defaulted his due process claim.

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for filing a habeas corpus petition. 28 U.S.C. § 2244(d)(1). The one-year period usually runs from "the date on which the [state-court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. § 2244(d)(1)(A). In the present case, petitioner asserts, and respondent agrees, that petitioner's state-court judgment became final in 1995. Petitioner argues that because his conviction became final in 1995 – prior to April 24, 1996, AEDPA's effective date – AEDPA's statute of limitations does not apply to this case. (See Pet'r's Reply to State's Answer [Docket #7] at 4; Pet'r's Final Reply Br. [Docket #16] at 8.) However, where

4

a habeas petitioner's conviction was final prior to AEDPA's effective date, the petitioner was granted a one-year grace period (that is, until April 24, 1997) to file a timely habeas petition. Allen v. Siebert, __ U.S. __, 128 S. Ct. 2, 3 (2007); Araujo v. Chandler, 435 F.3d 678, 680 (7th Cir. 2005); Balsewicz v. Kingston, 425 F.3d 1029, 1032 (7th Cir. 2005); Newell v. Hanks, 283 F.3d 827, 832-34 (7th Cir. 2002). Thus, even though petitioner's conviction became final prior to AEDPA's effective date, he is still bound by AEDPA's statute of limitations. Petitioner had until April 24, 1997, to file a timely habeas petition. Because petitioner did not file until April 24, 2008 (exactly eleven years too late), his petition must be dismissed.

Petitioner does not argue that the amendment of the judgment of conviction in 2003 changed the date on which his conviction became final. However, even if the amendment somehow re-set the limitations period, the petition would still be untimely. Petitioner was not pursuing any state remedies during the year following entry of the amended judgment,[3] and thus a timely petition under this hypothetical scenario would have been due by June 18, 2004.

Finally, although petitioner does not contend that the limitations period should have been equitably tolled for any reason, he does contend that he has "cause" for his delay. (Pet'r's Reply to State's Answer [Docket #7] at 6-8.) Because petitioner is proceeding pro se, I will construe this as an argument that the statute of limitations should be equitably tolled. To be entitled to equitable tolling, petitioner must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way

---

[3]The statute of limitations is tolled while a properly-filed application for state post-conviction or other collateral review is pending. 28 U.S.C. § 2244(d)(2).

5

and prevented timely filing. E.g., Lawrence v. Florida, 549 U.S. 327, 336 (2007); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Equitable tolling is rarely granted. Tucker v. Kingston, 538 F.3d 732, 734 (7th Cir. 2008). Indeed, the Seventh Circuit has yet to identify a petitioner whose circumstances warrant it. Id.

In the present case, petitioner does not precisely identify any obstacle that prevented him from filing a habeas petition prior to April 24, 2007. He seems to argue that his state post-conviction counsel "abandoned" him after losing the motion for clarification and then took certain "records" with him without providing petitioner with copies. (Pet'r's Reply to State's Answer [Docket #7] at 6.) Presumably, petitioner means to argue that without the records in his lawyer's possession, he could not have filed a federal habeas petition by April 24, 2007. Petitioner states that he made a request for his records through the state public defender's office but was informed that the records were "destroyed or unavailable." (Id. at 7.) Petitioner then requested copies from the state clerk of court, but the clerk would not provide him with copies unless he paid $2.00 per page, which he could not afford. Petitioner alleges that the clerk refused to make copies without receiving payment even after learning that petitioner was indigent. In October 2006, petitioner received "aide [sic] from a benefactor," which allowed him to pay for copies of certain transcripts through the clerk of court. (Id.) It then took plaintiff until September 7, 2007, to file his state habeas petition. Petitioner states that he suffers from degenerative bone and disc disease, which makes it hard from him to type or write, and that his disease explains why it took him eleven months after receiving the transcripts to file his state habeas petition. (Id. at 8 n.3.)

6

Case 2:08-cv-00347-LA    Filed 02/17/09    Page 6 of 9    Document 15

Although these facts suggest that petitioner had trouble obtaining copies of certain documents and transcripts,[4] petitioner does not explain why he could not file a timely habeas petition without them. Petitioner does not contend that he was unaware of either the trial court's decision to leave his convictions for burglary and false imprisonment intact or of the court of appeals's denial of his petition for clarification. Thus, petitioner knew that the state courts had ruled against him. At that point, a reasonably diligent person would have investigated whether any additional avenues of appeal were left open and, if so, taken whatever steps were necessary to follow those avenues, including filing a timely writ of habeas corpus in federal court. If petitioner could not have obtained copies of crucial documents, such as the trial court's order or the court of appeals's decision, and thus could not have determined the precise date on which certain orders were entered and his conviction became final, petitioner might have grounds for tolling the statute of limitations for a reasonable period. However, even without these documents, a reasonable person would have known that his conviction became final at some point during the 1990s and would have taken steps to preserve his remaining appeal rights. Such a person would not think he could simply wait a decade and hope that at some point in the future he will be able to obtain the documents and then prosecute his case. Accordingly, the lack of access to documents is not an "extraordinary circumstance" that would justify tolling the limitations period for eleven years.

---

[4]I note that petitioner is silent about <u>when</u> he began to request documents from the public defender's office and the clerk of court. Nothing indicates that his requests were made prior to April 24, 1997, and it may be that petitioner did not request such documents until recently.

Case 2:08-cv-00347-LA   Filed 02/17/09   Page 7 of 9   Document 15

Petitioner does not argue that he lacked access to legal research materials or was otherwise prevented from exercising reasonable diligence and learning that his time to file a federal habeas petition was limited. Even though § 2244(d) did not exist when petitioner's state conviction became final, the concept of "prejudicial delay" did, see 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice & Procedure § 24.1 (5th ed 2005) (explaining that concept of prejudicial could be applied pre-AEDPA to bar untimely habeas petition), and so petitioner would not have been justified in thinking that his time to file a federal habeas petition was limitless. Further, although petitioner claims that his state post-conviction counsel abandoned him, a habeas petitioner has no right to counsel, and thus the lack of counsel cannot constitute grounds for equitable tolling, so long as the state did not prevent the petitioner from either hiring his own attorney or representing himself. Lawrence, 549 U.S. at 336-37; see also Tucker, 538 F.3d at 735 (holding that pro se litigant's lack of legal expertise is not a reason to invoke equitable tolling).

In short, petitioner has not satisfied his burden to demonstrate his own diligence and the presence of an extraordinary circumstance that prevented him from filing a timely habeas petition. Tucker, 538 F.3d at 735. Therefore, he is not entitled to equitable tolling, and this action will be dismissed because it is barred by § 2244(d). Because respondent's statute-of-limitations argument is dispositive, I do not consider his alternative argument that petitioner has procedurally defaulted his due process claim.

## III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.  The clerk of court shall enter final judgment dismissing this action.

Dated at Milwaukee, Wisconsin, this 17 day of February, 2009.

/s_____
LYNN ADELMAN
District Judge